CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 04 2013

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LENORE LINKOUS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:12-cv-00229 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| STELLARONE BANK, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

This case involves an action filed pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The plaintiff, Ms. Lenore Linkous, claims she was fired from her position with the defendant, StellarOne, because of her age. The defendant has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The court finds that the plaintiff has demonstrated a genuine dispute over whether her age was the "but for" cause of her termination, and will deny the defendant's motion.

I.    **Factual Background**

In October of 2000, Ms. Linkous was hired by First National Bank as the Branch Manager for the Bank's 601 North Main Street location in Blacksburg, Virginia ("North Main"). StellarOne was formed on May 27, 2008 out of the merger of First National Bank and Virginia Financial Group, Inc. Ms. Linkous continued in her role with StellarOne until she was fired on August 24, 2011, at which time she was sixty-eight years old.

Ms. Linkous worked successfully with the company for a number of years, receiving performance reviews for the years 2009 and 2010 stating that she "exceeds expectations" and "meets expectations," respectively. In August, 2011, however, Melia Wright, a teller at North Main, filed a complaint with StellarOne's Human Resources Department against Ms. Linkous.

Ms. Wright complained that Ms. Linkous was retaliating against her for having applied for a position at another StellarOne branch.

The complaint was handled by Nancy Mitchell, Senior Human Resources manager for StellarOne. In response to the complaint, Ms. Mitchell, along with Lisa Cannell, StellarOne's Chief Human Capital Officer, initiated an investigation into Ms. Linkous' performance. As part of her investigation, Ms. Mitchell spent five days interviewing employees at the North Main Branch. It is StellarOne's position that the information uncovered during the investigation led to Ms. Linkous' termination. First, a number of employees told Ms. Mitchell that Ms. Linkous frequently discussed her personal life while at work. The bulk of these discussions involved Ms. Linkous' ex-boyfriend, Willie Price. The employees reported that Ms. Linkous spoke with them about how she had caught Mr. Price having an affair with another woman. Ms. Wright stated that Ms. Linkous explained the scene to her in very graphic terms. Additionally, several employees informed Ms. Mitchell of a specific conversation concerning Mr. Price that Ms. Linkous had with a customer in the lobby of the bank. The customer, a friend of Ms. Linkous', asked her when she would next see Mr. Price. Ms. Linkous responded that she would probably see him the following week when she went to feed the cat of a friend who lived nearby. In the presence of the customer and her subordinate employees, Ms. Linkous stated that when she saw Mr. Price she "would wear [her] nightgown, and it won't be my flannel one." (Linkous Dep. 76:11-17.) Ms. Linkous acknowledges making this comment. StellarOne contends that, as a

result of the information uncovered during Ms. Mitchell's investigation,[1] Ms. Mitchell and Ms. Cannell made the decision to recommend that Ms. Linkous be terminated. The two took their recommendation to Michael Kane, the ultimate decision-maker in the matter. After reviewing the investigation results, Mr. Kane accepted the termination recommendation. Mr. Kane stated that the deciding factor was the inappropriate nightgown comment that Ms. Linkous made in front of customers and co-workers. Although StellarOne has an employee disciplinary policy which provides that most first-time problems should be handled through warnings and/or additional training, the policy contemplates immediate termination when "the employee has done something so egregious that immediate dismissal is appropriate." (Cannell Dep. Ex. 4.) Mr. Kane has stated that he felt the comment warranted immediate dismissal.

The plaintiff takes issue with the defendant's characterization of her job performance. First, she points to the positive performance reviews she received for the years 2009 and 2010, the second of which was signed by Michael Kane only five months before the termination. The 2010 review resulted in an overall rating of "meets expectations." The reviews evaluate employees on five specific performance goals: Business Development, Sales Process, Operations, Core Values, and Leadership/Management. Ms. Linkous received "exceeds expectations" scores in the Core Values and Leadership/Management categories. The results sections for these categories included comments such as "Lenore has been building . . . the Blacksburg Team. She is the face of StellarOne in Blacksburg and is highly respected," and "Lenore completes all assignments in a timely manner. She leads by example everyday."

---

[1] In addition to the comment, employees reported other concerns about Ms. Linkous to Ms. Mitchell. For example, a number of employees reported that Ms. Linkous regularly had lengthy personal conversations with customers. Additionally, Melia Wright reported that Ms. Linkous invited a friend to chat in her office from 5:00 p.m. until 6:00 p.m. every other Friday, even though the drive-thru teller window remained open during that time. Certain employees also reported that they were hesitant to come to Ms. Linkous with work questions because of her propensity to initiate personal discussions. Finally, one employee reported that Ms. Linkous wasted company time by driving around aimlessly while she was supposed to be visiting businesses in the community building relationships.

(Docket No. 29-3, at 7.) The 2009 review earned Ms. Linkous an "exceeds expectations" overall rating, reflecting such positive feedback as "[Lenore] lives up to delivering the finest service in Blacksburg," and noting her "positive leadership" in helping to relocate another branch while still managing North Main.

Next, while acknowledging that the nightgown comment demonstrated "poor judgment," she explains it as a harmless joke told among good friends. Additionally, Ms. Linkous asserts that Ms. Mitchell's report greatly exaggerates the amount of time that was spent on personal matters. She has submitted affidavits of previous StellarOne employees who have attested to Ms. Linkous' proficiency in running the branch. Former colleagues Joyce Gray and Christine Lewis testified that Ms. Linkous performed the position of branch manager admirably, and Molly Prater, who took over the branch manager position at First Main following Ms. Linkous' termination, has stated that the branch was in great shape when she started and that the staff was sad that Ms. Linkous had been fired.

Ms. Linkous also points to comments made by a previous CEO of StellarOne, which she contends evince a desire to replace older employees with younger workers. Christine Lewis, a former StellarOne employee, testified that Bill Heath, the Chairman of the Board of the company at the time, stated in a meeting sometime prior to January 2011 his belief that the bank needed to find someone younger and more attractive for the office's front desk position. Rickie Phillips, another former employee, stated that he overheard Mr. Heath say that he would like to put a younger face on StellarOne. This comment occurred sometime before May 2008.

Finally, Ms. Linkous notes that Ms. Mitchell conducted investigations of at least four StellarOne Financial Center Managers in 2011, all of which ended in a recommendation of

termination. Ms. Linkous observes that the four terminated managers were all over the age of forty.

## II. Discussion

### A. Standard of Review

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating whether a genuine issue exists, courts must construe all facts and reasonable inferences in the light most favorable to the nonmovant. Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 299 (4th Cir. 2008).

### B. Analysis

To establish a claim for age discrimination under the ADEA, a plaintiff must prove by a preponderance of the evidence that age "was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 180 (2009) (holding that a mixed-motive instruction is never appropriate in an ADEA case).[2] There are two ways a plaintiff may prove a claim for age discrimination under the ADEA. First, a plaintiff may demonstrate "through direct or circumstantial evidence that . . . age discrimination motivated the employer's adverse employment decision." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc). "The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima

---

[2] Even before the Supreme Court's decision in Gross, the Fourth Circuit had recognized that, in the context of an ADEA case, "motivated" meant "but-for" causation. See Hill v. Lockheed Martin Logistics Mgmt.,Inc., 354 F.3d 277, 286 (4th Cir. 2004) (en banc) ("[Age] must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.") (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000)).

5

facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Id. This is the familiar McDonnell Douglas burden-shifting approach established for Title VII employment discrimination cases.[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). With no direct evidence of age discrimination in this case, the plaintiff is proceeding under the burden-shifting approach.

Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of age discrimination. To do so, Ms. Linkous must show that "(1) [s]he is a member of the protected class; (2) [s]he was qualified for the job and met [StellarOne's] legitimate expectations; (3) [s]he was discharged despite [her] qualifications and performance; and (4) following [her] discharge, [s]he was replaced by a substantially younger individual with comparable qualifications." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006) (citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996); Causey v. Balog, 162 F.3d 795, 802 & n. 3 (4th Cir. 1998)). If the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the termination. Hill, 354 F.3d at 285. Thereafter, the burden shifts back to the plaintiff to prove that the employer's stated reasons "were not its true reasons, but were a pretext for discrimination." Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). At that point, the plaintiff's burden to establish pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). Where a

---

[3] Although the Supreme Court has not definitively held that the McDonnell Douglas framework applies in the ADEA context, the Fourth Circuit, as well as other courts, have routinely applied McDonnell Douglas to ADEA claims. See, e.g., Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006); Yeschick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012).

6

plaintiff has succeeded in establishing her prima facie case, "the fact-finder's rejection of the legitimate, nondiscriminatory reason proffered by the defendant, coupled with the elements of the prima facie case, may permit the fact-finder to infer the ultimate fact of invidious discrimination with no additional proof of discrimination." Jiminez v. Mary Wash. Coll., 57 F. 3d 369, 378 (4th Cir. 1995).

### i. Prima facie case

StellarOne argues that Ms. Linkous cannot establish a prima facie case of age discrimination because she was not meeting its legitimate job expectations at the time of her August 2011 termination.[4] To establish a prima facie case, Ms. Linkous must show she "was doing [her] job well enough to rule out the possibility that [s]he was fired for inadequate job performance, absolute or relative." Warch, 435 F.3d at 515.

StellarOne argues that the information gathered during Ms. Mitchell's August 2011 investigation establishes that Ms. Linkous was not meeting its expectations for a branch manager. The company focuses on Ms. Linkous' nightgown comment and reports from fellow First Main employees regarding her job performance. StellarOne notes that Ms. Linkous has acknowledged that the comment exhibited "poor judgment" on her part. Mr. Kane has testified that the comment alone was sufficient cause to terminate her employment. Specifically, Mr. Kane testified that the comment was "unacceptable behavior" that was "unbecoming anybody in the financial center in the public." (Kane Dep. 13:12-13, 17: 16-17.) Ms. Cannell testified that she believed termination was appropriate based on the combination of the "complaints, inappropriate judgment being used making comments of a more than personal nature to

---

[4] StellarOne does not contest that Ms. Linkous was over the age of 40, that she was terminated, or that she was replaced by Molly Prater, who was 48 at the time and qualifies as a substantially younger individual.

7

employees in the branch, the morale issues in the branch, and the lack of doing her job that had been brought up." (Cannell Dep. 31:24-32:6.) StellarOne contends that the testimony of Mr. Kane and Ms. Cannell establishes that the plaintiff was not meeting her legitimate job expectations as determined by the individuals who made the decision to terminate her. McKnight v. Ridgecrest Health Group, LLC, Case No. 2:11cv00032, 2013 WL 173005, at *5 (W.D. Va. Jan. 16, 2013) (holding that "the key inquiry is whether, in the eyes of the decision-makers who terminated her, [the employee] was performing in line with [the employer's] reasonable expectations").

The court disagrees. Although the evidence presents somewhat of a close case, the court is unable to conclude that Ms. Linkous has not established her prima facie case. Ms. Linkous received entirely positive performance reviews for the two years immediately prior to her termination. Her most recent review was signed by Mr. Kane only five months before she was fired. Prior to Melia Wright's complaint, Ms. Linkous had worked for the company or its predecessor for over a decade without a single formal grievance filed against her. Additionally, the manager who replaced Ms. Linkous at North Main has testified that the branch was in excellent shape when she took over and that Ms. Linkous was eminently qualified to continue running the branch. Although opinions of co-workers are not as pertinent to the analysis as the employer's own judgment, see DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998), StellarOne has largely relied on the negative opinions of other co-workers in arguing that Ms. Linkous was not meeting her legitimate job expectations. Indeed, aside from the nightgown comment, all of StellarOne's evidence of Ms. Linkous' poor performance comes from negative critiques offered by North Main employees.

As the Fourth Circuit has explained, when "the evidence creates a close call . . . , we must remember that 'the burden of establishing a prima facie case of disparate treatment is not onerous.'" Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). The court finds that, at the very least, there is a question of fact as to whether Ms. Linkous was meeting her employer's legitimate expectations. Having satisfied this "relatively modest" burden, Ms. Linkous has established a prima facie case of age discrimination. Wesley v. Arlington County, 354 Fed. App'x 775, 778 (4th Cir. 2009) (unpublished) (quoting Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003) (internal quotations and citations omitted)).

### ii. Pretext

Having concluded that the plaintiff has established a prima facie case of age discrimination, the burden shifts to StellarOne to put forth a legitimate, non-discriminatory reason for Ms. Linkous' termination. StellarOne's position on this point largely tracks its argument as to why Ms. Linkous has failed to establish her prima facie case; that is, it argues that the decision to fire Ms. Linkous was the result of the information uncovered during Ms. Mitchell's investigation of the North Main branch, in particular the inappropriate nightgown comment made by Ms. Linkous. Mr. Kane stated that the comment "created an uncomfortable environment in the financial center," and that it "was the reason [Ms. Linkous] was let go." (Kane Dep. 18:1-6.) Ms. Linkous may still avoid summary judgment if she can show that StellarOne's asserted reasons for the termination were merely pretext for discrimination.

A plaintiff may show pretext by either: (1) persuading the court that a discriminatory reason more likely motivated the employer, or (2) showing that the employer's proffered explanation is unworthy of credence. Reeves, 530 U.S. at 147. "In appropriate circumstances,

9

the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Id. The court believes that triable issues of fact underlie the veracity of StellarOne's tendered justification for Ms. Linkous' termination, and, thus, whether its justification is pretext for discriminatory animus.

First, the highly positive performance reviews Ms. Linkous received shortly before her termination cast a reasonable doubt on StellarOne's proffered justification. This is particularly so when one considers that Ms. Linkous received her most positive marks in the Leadership/Management and Core Values categories. These areas of the reviews concern the same type of behavior for which she was criticized in Ms. Mitchell's report and ultimately fired, e.g., team building, leading by example, and being a respected face in the community. The fact that just five months before her termination Ms. Linkous received "exceeds expectations" reviews on the same behavioral and leadership qualities that stand as the proffered reason for her termination can reasonably be interpreted as an indication that StellarOne's justification arose as a pretext for its desire to replace Ms. Linkous with a younger manager.

StellarOne's justification is cast into further doubt when one considers the company's Corrective Action Policy, which provides that most first-time disciplinary problems be handled through a warning and/or additional training. A fact finder could reasonably be suspicious of StellarOne's refusal to offer coaching or additional training to an employee who was until recently so highly regarded, particularly in the areas of her position now being called into question. Although a court does not evaluate the wisdom of the employer's decision, it must inquire into whether a reasonable jury could find that the stated justification is false. See DeJarnette, 133 F.3d at 299 ("When an employer gives a legitimate, non-discriminatory reason for an employment action, . . . it is not the province of the Court to decide whether the reason

was wise, fair, or even correct, ultimately, so long as it truly was the reason for the employment action.") (citation and quotations marks omitted). This evidence presents a reasonable basis upon which the fact finder could reject StellarOne's proffered justification, and, considering that rejection in tandem with the plaintiff's prima facie case, infer the presence of unlawful age discrimination. See Jimenez 57 F. 3d at 378. The court will therefore deny the defendant's motion for summary judgment.[5]

**III. Conclusion**

For the reasons stated above, the court will deny the defendant's motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 4th day of June, 2013.

_____
Chief United States District Judge

---

[5] Although not as persuasive, the court also notes two additional pieces of evidence advanced by the plaintiff: (1) the age-related comments of Bill Heath, former Chairman of the Board of StellarOne; and (2) the fact that all four of Ms. Mitchell's 2011 investigations led to the firing of employees over the age of forty. While this evidence would likely be insufficient on its own to create an inference of discrimination, when considered in light of the evidence discussed above, it further clouds the authenticity of StellarOne's stated justification for the termination.

11